270 F.2d 419
 Robert Cushman MURPHY et al., Plaintiffs-Appellants,
v.
Ezra Taft BENSON, Secretary of Agriculture of the United States, Defendant, and
Lloyd Butler, Area Supervisor, Plant and Pest Control Division of the United States Department of Agriculture et al., Defendants-Appellees.
 No. 270.
 Docket 25448.
 United States Court of Appeals Second Circuit.
 Argued April 21, 1959.
 Decided October 1, 1959.
 
 Roger Hinds and Vincent A. Kleinfeld, New York City (Frank C. Mebane, Jr., and William J. Cahill, New York City, on the brief), for plaintiffs-appellants.
 Lionel Kestenbaum, Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., and Alan S. Rosenthal, Dept. of Justice, Washington, D. C., on the brief), for defendant-appellee Butler.
 Irving L. Rollins, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., and Paxton Blair, Sol. Gen., Albany, N. Y., on the brief), for defendant-appellee Carey.
 Before LUMBARD, Circuit Judge, and GALSTON and ANDERSON, District Judges.
 LUMBARD, Circuit Judge.
 
 
 1
 Robert Cushman Murphy and six other home-owners in Nassau and Suffolk Counties, New York, brought this action in May of 1957 to enjoin the defendants, officials of the United States and the New York State governments from spraying their properties with DDT in solution as part of a federal government program to spray aerially Nassau and Suffolk Counties for the purpose of eradicating the gypsy moth. The plaintiffs' bill alleged that the government activities purportedly authorized by Section 102 of the Department of Agriculture Organic Act of 1944, 58 Stat. 735, as amended, 7 U.S. C.A. § 147a, and the New York Agriculture and Markets Law, § 164, would deprive them of property without due process of law in contravention of the Fifth and Fourteenth Amendments to the Constitution, and constituted a commonlaw trespass. In addition to the prayer for an injunction, the bill sought damages for such harm as might result to the plaintiffs from the spraying, if the program were carried out. Later the same month, Judge Byers, upon affidavits and after hearing argument, denied a motion for a preliminary injunction. D. C., 151 F.Supp. 786. From this denial of a preliminary injunction no appeal was taken.
 
 
 2
 During June of 1957, the spraying program was conducted over the counties of Nassau and Suffolk, including the properties of the plaintiffs. Subsequently, the case was tried during February and March of 1958 before Judge Bruchhausen who dismissed the complaint in June, 1958. D.C., 164 F.Supp. 120. The trial judge held, inter alia, that no legal rights of the plaintiffs had been violated and that the plaintiffs had not shown that they had suffered damage by reason of the spraying. We find it unnecessary to reach the merits of the plaintiffs' claim for injunctive relief. The 1957 spraying program, which precipitated this suit, has been completed and the record amply indicates the unlikelihood of a future aerial spraying in the area of plaintiffs' property. We, therefore, hold the question of granting injunctive relief to be moot and direct the dismissal of so much of the bill as seeks such relief.
 
 
 3
 United States Department of Agriculture officials testified at trial that their program called for only one major aerial spraying. Follow up treatment was to be on a local basis where field investigation showed that moth egg masses had not been totally destroyed. By what means the follow up might be carried out was uncertain and dependent upon future research with various chemicals and methods of ground and aerial spraying. Furthermore, Department officials testified that a single spraying by air has proved entirely effective in other parts of the Eastern United States and additional aerial sprayings have not been necessary. The trial judge stated in his opinion and in his findings of fact that it seemed unlikely that there would be further aerial spraying on Long Island in light of the effectiveness of the 1957 campaign, and the record amply supports those findings.
 
 
 4
 It is true that Department officials could not state with certainty at trial that further aerial spraying would never be necessary, but the mere possibility that at some future date conduct similar to that engaged in by the defendants in the past may again be contemplated is not sufficient to prevent a dismissal for mootness. United States ex rel. Norwegian Nitrogen Products Co. v. United States Tariff Commission, 1927, 274 U.S. 106, 47 S.Ct. 499, 71 L.Ed. 949. In the Norwegian Nitrogen Products case, the plaintiff, claiming a right to a hearing before the Tariff Commission, sought to enjoin its investigation. While the suit was pending, the investigation was completed, and the Commission's recommendation was sent to the President. The Supreme Court, in vacating the decision below with directions to dismiss as moot, reasoned:
 
 
 5
 "The commission has filed its report with the President, and the President has made his decision and proclamation fixing the revised tariff. Either may revive the investigation, but neither is under a duty to do so. Assuming that the plaintiff is entitled to a hearing of the character demanded whenever an investigation is had, which we do not decide, it would be an idle ceremony to require such a hearing upon an investigation which we may not command and which may never be made. 274 U.S. at pages 111-112, 47 S.Ct. at page 501.
 
 
 6
 This reasoning applies to the situation presented by the record in this case. Plaintiffs may not require the court to determine their legal rights under a set of circumstances which it appears probable will not arise again. Plaintiffs' constitutional claim is based primarily on the manner in which the 1957 spraying program was conducted. It appears from the record that the technique to be employed in any further spraying, where-ever it may be, will be redetermined in each case.[1]
 
 
 7
 Cases such as United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303, and United States v. Trans-Missouri Freight Ass'n, 1897, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007, relied upon by the plaintiffs, are not in point. These cases, in which contentions of mootness were rejected, concerned illegal courses of conduct discontinued because of the commencement of prosecution, and likely to be reinstituted upon a dismissal. The acts involved in the present case were discontinued because they had achieved their objective, and the evidence indicates little likelihood of their repetition. Motives of self-interest, which were highly influential factors in the formation of the Court's conclusion that the illegal conduct in W. T. Grant and Trans-Missouri would probably be renewed, are not present here. Nor is the plaintiffs' position supported by cases dealing with government activities periodic in nature, and certain to be repeated, such as Southern Pac. Terminal Co. v. Interstate Commerce Commission, 1911, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310.
 
 
 8
 There remains for consideration plaintiffs' claim for damages. We note that since the prayer for injunctive relief must fail for mootness, there is a question whether the federal court retains jurisdiction over the damages claim, either as an independent federal cause of action or as a claim pendant to that for injunctive relief. We do not need to decide this question, since in any event the plaintiffs are not entitled to damages on the record before us.
 
 
 9
 We agree with the district judge that the plaintiffs have failed to prove what damages, if any, they have suffered by reason of the spraying. Further, we think that plaintiffs' counsel, by the conduct of their case at trial and by their amended complaint, clearly indicated an intention to abandon the claim for damages in this case. The original complaint, filed prior to the spraying, contains only a single, general reference to the claim for damages, without any indication of what their nature or amount might be, and the amended complaint, filed subsequent to the spraying and subsequent to the completion of the trial in order to conform to the evidence, contains no reference at all to the damage claim or the amount of damages sought. In addition, the trial record contains no testimony, expert or otherwise, as to the amount of damages suffered by the plaintiffs.
 
 
 10
 The judgment of the district court with respect to the injunctive claim is vacated and the cause is remanded with instructions to dismiss the prayer for injunction as moot. The judgment with respect to the claim for damages is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Of course, if complaint is made again, regarding a further spraying program, it would be the duty of the district court to re-examine the proposed practices and procedures for carrying out the spraying in the light of available techniques and aircraft and the circumstances then prevailing. But remote as we believe a possible recurrence of spraying these areas to be, it would seem well to point out the advisability for a district court, faced with a claim concerning aerial spraying or any other program which may cause inconvenience and damage as widespread as this 1957 spraying appears to have caused, to inquire closely into the methods and safeguards of any proposed procedures so that incidents of the seemingly unnecessary and unfortunate nature here disclosed, may be reduced to a minimum, assuming, of course, that the government will have shown such a program to be required in the public interest