**R.C. BIGELOW, INC.**

v.

**UNILEVER N.V., Thomas J. Lipton, Inc., Celestial Seasonings, Inc. and Kraft, Inc.**

**Civ. No. B–88–299(JAC).**

United States District Court, D. Connecticut.

June 15, 1988.

Paul Windels, Jr., Anthony A. Dean, Windels, Marx, Davies & Ives, New York City, for plaintiff.

Richard Orr, Tyler Cooper & Alcorn, New Haven, Conn., for defendants Thomas J. Lipton, Inc., Celestial Seasonings, Inc. and Kraft, Inc.

Richard J. Wertheimer, Arnold & Porter, Washington, D.C., for defendant Thomas J. Lipton, Inc.

Tefft W. Smith, Kirkland & Ellis, Chicago, Ill., for defendants Celestial Seasonings, Inc. and Kraft, Inc.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

Plaintiff R.C. Bigelow, Inc. ("Bigelow"), the nation's third largest producer of herbal tea, seeks to enjoin a proposed merger of the two largest producers of herbal tea in the country. The question presented is whether Bigelow has made a sufficient showing of "antitrust injury" to establish standing under section 16 of the Clayton Act, 15 U.S.C. § 26.

Bigelow brings this action for injunctive relief against Unilever N.V. ("Unilever"), Thomas J. Lipton, Inc. ("Lipton"), Celestial Seasonings, Inc. ("Celestial"), and Kraft, Inc. ("Kraft"),[1] pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26. Bigelow alleges that the proposed acquisition by Lipton of Celestial will substantially lessen competition and create a monopoly in the national market for herbal teas, thereby

---

1. Celestial is a subsidiary of Kraft, and Lipton is a subsidiary of Unilever. Although Unilever has neither entered an appearance in this case nor responded in any other manner, the parties are in agreement that Unilever's presence in this action is unnecessary at this stage of the proceedings. *See* Certified Official Transcript of Hearing of June 10, 1988 (filed June 13, 1988) ("Transcript") at 13–14.

threatening Bigelow with serious loss and damages. Defendants have moved for summary judgment on the ground that plaintiff lacks standing to assert its claim for injunctive relief.[2]

On May 31, 1988, the court entered a temporary restraining order upon the consent of defendants Lipton, Celestial, and Kraft enjoining defendants from carrying out the proposed transaction until either defendants' dispositive motion is granted or a trial on the merits now scheduled for June 20, 1988 is concluded. A hearing on the motion for summary judgment was held on June 10, 1988. At that hearing, the parties represented that, if necessary, they were ready to proceed to a trial on the merits, and that no new or additional discovery would be necessary. *See* Certified Official Transcript of Hearing of June 10, 1988 (filed June 13, 1988) ("Transcript") at 61–63, 67–68. Accordingly, the motion for summary judgment is ripe for decision.

### I.

■ In order to grant a motion for summary judgment, the court must determine that there is no "genuine issue as to any material fact" and that "the party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material" fact is one whose resolution will affect the ultimate determination of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party opposing summary judgment must provide a factual basis for its allegations and may not rely on "mere speculation or conjecture as to the true nature of the facts." *Knight v.*

*United States Fire Insurance Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences *against* the moving party. *See Anderson,* 106 S.Ct. at 2509–11. Accordingly, the court must determine whether plaintiff has raised a genuine issue of material fact with respect to the threshold standing issue of "antitrust injury."

### II.

■ Section 16 of the Clayton Act, 15 U.S.C. § 26, provides injunctive relief for private parties "threatened [with] loss or damage by a violation of the antitrust laws." In *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), the Supreme Court held that only a private plaintiff threatened with "antitrust injury" has standing to sue under section 16. In other words, "a private plaintiff must allege threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" 107 S.Ct. at 491 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). Because the antitrust laws "were enacted for 'the protection of *competition,* not *competitors,*'" *Brunswick,* 429 U.S. at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)) (emphasis in *Brown* ), "only harm stemming from a reduction in competition qualifies as injury cognizable under the antitrust laws." *Adams v. Pan American World Airways, Inc.,* 828 F.2d 24, 26 (D.C.Cir.1987), *cert. denied,* —— U.S. ——,

---

**2.** Defendant originally filed a document entitled "Defendants' Memorandum in Opposition to Plaintiff's Request for a Temporary Restraining Order." At the hearing of May 31, 1988, the defendants agreed that that memorandum was, in effect, a motion to dismiss for failure to state a claim, and agreed to have the court consider the documents as such. At the same time, the court and the parties agreed on a schedule for expedited discovery prior to a hearing on defendants' motion and, if necessary, a hearing on plaintiff's motion for a preliminary injunction. Rule 12(b) of the Federal Rules of Civil Procedure provides that if, on a motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." At the hearing of June 10, 1988, the parties agreed that the court might treat the pending motion as one for summary judgment. *See* Transcript at 15.

108 S.Ct. 1225, 99 L.Ed.2d 425 (1988). Activity which seeks to reduce competition is also referred to as "anticompetitive" or "predatory." *See Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 2857, 86 L.Ed.2d 467 (1985). In this case, therefore, the question is whether the proposed acquisition of Celestial by Lipton poses a threat of harm to Bigelow resulting from anticompetitive or predatory activity.

It is undisputed that the acquisition of Celestial by Lipton will result in Lipton's control of at least 80% of the market in herbal teas.[3] *See* Exhibit 9 to Affidavit of Clayton A. Prugh (filed June 9, 1988) ("Prugh Affidavit"); Transcript at 20. A post-acquisition market share of 80% is more than sufficient to establish a *prima facie* showing of "monopoly power." *See United States v. Waste Management, Inc.*, 743 F.2d 976, 981 (2d Cir.1984). It is clear, however, that "[t]he mere possession of monopoly power does not *ipso facto* condemn a market participant." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 275 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980); *see also Northeastern Telephone Co. v. American Telephone & Telegraph Co.*, 651 F.2d 76, 84–85 (2d Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982). As the Court of Appeals for the Fifth Circuit recently observed, "[i]n *Cargill*, the [Supreme] Court required that the plaintiff not simply be a competitor of an alleged monopolist; rather, the plaintiff must show antitrust injury." *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir.1988). Accordingly, the mere fact that Lipton will possess monopoly power after the proposed acquisition is not a sufficient showing that Lipton will exercise that power in a way that will cause antitrust injury to Bigelow. *See also* 3 P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 710 (Supp.1987) ("Mere monopoly pricing is not a violation of the Sherman Act.").

It is arguable that a showing of monopoly power would be sufficient if it were also shown that Lipton was acting with predatory intent when it sought to acquire Celestial. *See Aspen Skiing*, 105 S.Ct. at 2857 & n. 28. Bigelow contends that Lipton intends to acquire Celestial in order to secure monopoly power and thereafter drive plaintiff out of the herbal tea market. In support of this contention, Bigelow argues that Lipton has paid "a substantial premium over the realistic value of Celestial" and is prepared to pay this premium as a means to obtain monopoly power. Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction (filed May 26, 1988) at 14. Bigelow has also submitted evidence showing that Lipton approached Bigelow one week after the proposed acquisition was announced expressing an interest to buy Bigelow. *See* Affidavit of David C. Bigelow (filed May 30, 1988) ("Bigelow Affidavit") at ¶ 34. In plaintiff's view, this evidence demonstrates that Lipton was acting with predatory intent when it sought to acquire Celestial.

There is nothing in the record, however, to indicate why the proposed purchase price for Celestial ought to be regarded as excessively high. More important, there is nothing in the record to suggest that Lipton was willing to pay a substantial premium in order to obtain monopoly power. To the contrary, there is evidence showing that Celestial was sold to Kraft four years earlier at a price within reasonable range of the price now being offered by Lipton. *See* Deposition of David W. Frost (filed June 9, 1988) at 15. Indeed, the president of plaintiff, David C. Bigelow, has testified that he would be willing to sell his own company (whose market share is less than a third of Celestial's) for a substantially *greater* sum than Lipton is offering to pay for Celestial. *See* Deposition of David C. Bigelow (filed June 10, 1988) ("Bigelow Deposition") at 253; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (filed June 9, 1988) ("Plaintiff's Memorandum") at 3. Mr. Bigelow also observed, with reference to the

---

3. Defendants agreed to assume for the purposes of this argument that the relevant market is "herbal tea" as opposed to "tea." *See* Transcript at 18.

high value of his own company, that "franchises [sic] are very valuable today. I don't have to tell you. Franchises like Bigelow, Lipton, and Celestial [are] strongly valuable." *Id.* Finally, the evidence in the record supports Lipton's position that the purchase price reflects in part Lipton's expected cost savings and efficiencies. *See* Exhibit 13 to Prugh Affidavit; Exhibit 1 to Affidavit of Andrew M. Rosenfield (filed June 10, 1988) at Attachment 3. Without some factual showing that Lipton's purchase price reflects a payment for monopoly power, plaintiff's allegations of predatory intent remain speculative.

Plaintiff has also submitted several of Lipton's internal memoranda for the purpose of demonstrating Lipton's intent to "eliminate competition" in the herbal tea market. *See* Exhibits 17, 18, 19, 20, 21, 23, 24 to Prugh Affidavit. However, these memoranda indicate nothing more than general competitive intent to "play hardball" with the competition. Bigelow Deposition at 158. They do not suggest that Lipton intended to "eliminate competition" by any means other than fair competition. To the contrary, the evidence demonstrates that Lipton simply intended to engage in "vigorous competition." *Cargill*, 107 S.Ct. at 492. Without evidence that Lipton's acquisition of Celestial is an attempt "to exclude rivals on some basis other than efficiency," Bigelow's allegations of predatory intent must fail. R. Bork, *The Antitrust Paradox* 138 (1978).

Although plaintiff has failed to raise a genuine issue of material fact regarding Lipton's intent in acquiring Celestial, plaintiff may nevertheless establish "antitrust injury" if it can show that there is a substantial likelihood that Lipton will engage in predatory activity after the acquisition. In this regard, Bigelow alleges several predatory practices in which Lipton is likely to engage, with resulting antitrust injury. These are: (a) predatory pricing; (b)

improper control over retail store shelf space and promotional schemes; (c) improper control over distributers to retail stores; and (d) improper control over suppliers of raw herbs.

## A.

Predatory pricing has been authoritatively defined by the Supreme Court as "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run." *Cargill*, 107 S.Ct. at 493. Our Court of Appeals, in turn, has defined the appropriate measure of cost as "prices below reasonably anticipated marginal cost." *Northeastern Telephone*, 651 F.2d at 88. The Supreme Court has warned that "[c]laims of threatened injury from predatory pricing must ... be evaluated with care," *Cargill*, 107 S.Ct. at 495 n. 17, since predatory pricing schemes are infrequently attempted and their success is "inherently uncertain." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986).[4]

Although plaintiff alleges that Lipton will engage in selective and temporary price reductions for at least some brands to a level below cost, *see* Bigelow Affidavit at 22, plaintiff has nevertheless failed to submit any evidence whatsoever in support of this allegation. To the contrary, Mr. Bigelow stated in his deposition that he has "no idea what prices will do" after the proposed acquisition. Bigelow Deposition at 137. Upon being asked "[w]hat specifically, if anything, do you believe that Lipton will do in the marketplace for herb tea upon the consummation of [the proposed acquisition]", Mr. Bigelow responded ", if I were to answer that, I mean it would just be pure speculation on my part ... as to what I would anticipate that they would do. I have no idea how they are going to manage the two companies." *Id.* at 138. Plain-

---

4. The Supreme Court has also noted that "the mechanism by which a firm engages in predatory pricing—lowering prices—is the same mechanism by which a firm stimulates competition; because 'cutting prices in order to increase business often is the very essence of competi-

tion ... mistaken inferences ... are especially costly, because they chill the very conduct the antitrust laws are designed to protect.'" *Cargill*, 107 S.Ct. at 495 n. 17 (quoting *Matsushita*, 106 S.Ct. at 1360).

tiff's counsel concedes that plaintiff has submitted no evidence of past instances of predatory pricing, see Transcript at 52, and there is no evidence in the record to suggest a present intent to engage in any such activity in the future. The evidence relied upon by plaintiff in this case is similar to that found insufficient by the Supreme Court in *Cargill*, where the Court observed that the "evidence" of predatory pricing consisted "only of four passing references . . . to the possibility that [defendant's] prices might dip below cost." *Cargill*, 107 S.Ct. at 494. The Court found such evidence to "fall far short of establishing an allegation of injury from predatory pricing." *Id.* Similarly, plaintiff's unsupported and contradictory allegations of predatory pricing in this case are insufficient to establish a threat of antitrust injury.[5]

## B.

In addition to predatory pricing, Bigelow argues that Lipton will induce supermarket chains to decrease or eliminate the amount of shelf space and the promotional schemes allocated to Bigelow. It has submitted evidence of Lipton's prior use of "planograms," or store shelf schematics, in support of its claim that Lipton will attempt to influence retail stores improperly. *See* Exhibits 33, 35 to Prugh Affidavit. Bigelow contends that Lipton, because it would command a monopoly share of the herbal tea market, could effectively require retailers to adopt these self-serving schematics or planograms.

The only material which Bigelow has submitted in support of this allegation, however, is a letter from its attorney to the Federal Trade Commission which sets forth a list of retail chain stores which allegedly have adopted Lipton's tea department schematic. *See* Exhibit 35 to Prugh Affidavit. However, standing alone, this information, if taken as true for the purposes of this motion, fails to raise a genuine issue of material fact with respect to whether Lipton will improperly compel retail store chains to adopt its schematics. Indeed, defendants have submitted an affidavit by Zip Lemmerman, Senior Vice President, Merchandising, for Pathmark Supermarkets, in which Mr. Lemmerman states that "it is Pathmark, and not Lipton or any other supplier, which decides shelf location and how much space each product will receive in the allocation." Affidavit of Zip Lemmerman, Exhibit 3 to Defendants' Memorandum in Opposition to Plaintiff's Request for a Temporary Restraining Order (filed May 31, 1988). Bigelow does not contend that planograms are *per se* illegal but rather that Lipton will employ such schematics in an illegal manner. Without some evidence of a prior history of such behavior, however, or of a present intent to engage in such behavior in the future, Bigelow has failed to raise a genuine issue of material fact on this claim.[6]

## C.

Plaintiff also alleges as predatory activity that Lipton will exercise improper control over distributors and suppliers. With respect to distributors, Bigelow submitted no evidence that Lipton will attempt to interfere improperly with Bigelow's distributors. Indeed, Mr. Bigelow views these distributors as "loyal" to his company. Bigelow Deposition at 191. He noted that his company has "a longstanding relationship with these distributors and we are very,

5. Even if the court were to have found that plaintiff had raised a genuine issue of material fact with respect to whether there was a substantial likelihood that Lipton would engage in predatory pricing, plaintiff has failed to submit any evidence raising a genuine issue concerning Lipton's ability to absorb the market shares of its competitors once prices have been cut, and the barriers to entry in the market when prices are subsequently raised to supracompetitive levels. These factors are also essential to a claim of predatory pricing, *see Cargill*, 107 S.Ct. at 494 n. 15, and plaintiff's failure to raise genuine issues of material fact with respect to them would also be fatal to its claim of predatory pricing.

6. Indeed, David C. Bigelow testified at his deposition that he does not expect Lipton to increase the amount of advertising and promotions for herbal tea previously expended by Lipton and Celestial. *See* Bigelow Deposition at 182. Mr. Bigelow even suggested that there might be a reduction. *See id.* at 247.

82

very strong with these people." *Id.* at 190. In fact, Mr. Bigelow stated that his distributors would have "no reason" at this time to anticipate reducing or eliminating their services to plaintiff. *Id.* at 187–88.

### D.

With respect to suppliers, plaintiff contends that the proposed acquisition poses a threat that Lipton will exercise improper control over the raw herb market. Again, however, Bigelow's allegations lack factual support in the record. No evidence in the record has been brought to the court's attention to support Bigelow's claims that it will suffer any shortage of raw materials *as a result of the proposed acquisition.* Although Bigelow has submitted evidence suggesting that the raw herb market suffers from "major world shortages," Exhibit 29 to Prugh Affidavit, there is no evidence suggesting that Lipton will intentionally interfere with plaintiff's supply of raw herbs during these times of shortage. Accordingly, the court finds that plaintiff has failed to raise a genuine issue of material fact concerning Lipton's alleged predatory control over distributors and suppliers.

### III.

As the Court of Appeals for the Fifth Circuit has observed, "*Cargill* has imposed significant barriers to competitor attempts to enjoin merger transactions." *Phototron Corp.,* 842 F.2d at 102. "Proof that an entity will commit bad acts is difficult to provide at the preliminary injunction stage. This is not to say, however, that once those bad acts occur, relief cannot be had. The antitrust laws provide treble damage recovery for competitors who successfully attack anticompetitive activities." *Id.* Although Bigelow asserts that at a later date it will be nearly impossible to unscramble the proverbial "scrambled eggs" of anti-

trust lore, *see* Plaintiff's Memorandum at 19, it is the case that Bigelow will nonetheless have an action for treble damages and injunctive relief for any antitrust injuries that it may suffer.[7] Having failed at this preliminary stage to raise a genuine issue of material fact with respect to whether it is threatened with antitrust injury, plaintiff's claim must fail. Accordingly, defendants' motion for summary judgment must be granted.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted.

It is so ordered.

---

7. At oral argument, counsel for plaintiff contended that plaintiff would *not* have a remedy at law if Lipton were to engage in the alleged activity because the alleged predatory activity would be too difficult to prove. *See* Transcript at 55–56. If plaintiff concedes that he would not be able to prove that he had suffered antitrust injury once the alleged illegal activity occurred, then it is difficult to understand how the

court could find that a substantial likelihood now exists that plaintiff will suffer antitrust injury in the future. *Cf. Cargill,* 107 S.Ct. at 490 (noting that "[i]t would be anomalous ... to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened injury for which he would not be entitled to compensation if the injury actually occurred").