**R.C. BIGELOW, INC.,**
**Plaintiff–Appellant,**

v.

**UNILEVER N.V., Thomas J. Lipton, Inc., Celestial Seasonings, Inc., and Kraft, Inc., Defendants–Appellees.**

**No. 1517, Docket 88–7505.**

United States Court of Appeals, Second Circuit.

Argued July 21, 1988.
Decided Jan. 17, 1989.

Paul Windels, Jr., New York City (Anthony A. Dean, Clayton A. Prugh, Windels, Marx, Davies & Ives, New York City, Colin E. Gunn, Westport, Conn., of counsel), for plaintiff-appellant.

Richard J. Wertheimer, Washington, D.C. (Kenneth V. Handal, Arnold & Porter, Washington, D.C., Tefft W. Smith, Daniel F. Attridge, Kirkland & Ellis, Chicago, Ill., of counsel), for defendants-appellees.

Before LUMBARD and ALTIMARI, Circuit Judges, and DEARIE, District Judge.[*]

ALTIMARI, Circuit Judge:

Plaintiff-appellant R.C. Bigelow, Inc. appeals from a judgment of the United States District Court for the District of Connecticut (Cabranes, *J.*), 689 F.Supp. 76 (1988), granting defendants-appellees' motion for summary judgment for failure to raise a genuine issue of material fact sufficient to establish standing to challenge a proposed merger under sections 7 and 16 of the Clayton Act, 15 U.S.C. §§ 18, 26. The question presented in the district court and on this appeal is whether, in order to survive a motion for summary judgment, plaintiff has demonstrated a sufficient factual basis indicating a substantial likelihood that the proposed merger of defendant-appellee Celestial Seasonings, Inc. by defendant-appellee Thomas J. Lipton, Inc. would threaten plaintiff with "antitrust injury" as required by *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) and *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Because we find that there is a genuine issue of material fact regarding the threat of "antitrust injury" to plaintiff, we reverse.

## BACKGROUND

On December 8, 1987, Thomas J. Lipton, Inc. ("Lipton"), a wholly-owned subsidiary of Unilever N.V., announced that it had agreed to purchase Celestial Seasonings, Inc. ("Celestial") from Kraft, Inc. In 1984, Celestial was sold by its founder to Kraft, a diversified consumer food products company. Celestial is the largest United States producer, with approximately 52% of the market, of "herbal teas," a special blend of caffeine-free ingredients. These "teas" actually are not derived from the "tea plant," which is the source of what is better known simply as "tea," or "black tea," but instead contain such herbs and natural ingredients as peppermint, spearmint, hibiscus flowers, camomile, orange peel, lemon rind, blackberry leaves, licorice roots, rosehips, and lemon verbena. Although herbal teas are ancient in origin, they have only within the last decade or so become widely available in supermarkets and grocery stores across the country to those who desire caffeine-free hot beverag-

* The Honorable Raymond J. Dearie, United States District Court for the Eastern District of New York, sitting by designation.

es. Herbal teas account for some $90 million in annual sales and represent over 90% of Celestial's current sales.

Lipton is a competitor of Celestial in the national market for herbal teas. It controls the second largest herbal tea market share at 32% while at the same time being the largest seller of black tea in the United States. In the early 1980s, Lipton entered the herbal tea market and for a brief time was the market leader; but since 1985 its market share has been dwindling. Lipton's parent, Unilever N.V., a Netherlands corporation, is one of the world's largest distributors of grocery products with worldwide sales in excess of $30 billion and, as a result, has gained substantial access to the all-important shelf space of supermarkets across the country.

The third largest producer of herbal teas is plaintiff-appellant R.C. Bigelow, Inc. ("Bigelow"). Bigelow is a family-owned corporation founded in 1945 by Ruth C. Bigelow in her kitchen in Manhattan. Today her son, company president and chief executive officer David C. Bigelow, his wife and their two daughters run the family business employing about 260 people from the company's headquarters in Norwalk, Connecticut. The company started out by making flavored black teas such as "Constant Comment," a tea blend with orange peel and spices. Then in 1979, Bigelow entered the herbal tea market and now has garnered a market share of 13%, accounting for approximately one-third of the company's sales. With an initial investment of under $100,000, Bigelow's herbal tea sales have increased to about $10 million annually.

Within a week following Lipton's announcement that it planned to acquire Celestial, Lipton allegedly approached Bigelow expressing an interest in negotiating the purchase of plaintiff, the only remaining competitor in the herbal tea market with a significant market share. Bigelow did not respond to Lipton's offer. Meanwhile, in accordance with the premerger notification requirements of 15 U.S.C. § 18a, Lipton informed the Department of Justice and the Federal Trade Commission

("FTC") of the proposed merger involving Celestial. The FTC conducted a full review of the transaction over a period of six months, and Bigelow by all accounts was an active complainant in objecting to consummation of the impending deal.

When it became clear to Bigelow that the FTC would take no action challenging the acquisition, Bigelow filed an action in the district court seeking, *inter alia*, a temporary restraining order and preliminary injunction under section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent the proposed merger from going forward. On May 31, 1988, the district court temporarily enjoined the merger pending a hearing on defendants' motion for summary judgment set for June 10, 1988. At that hearing, defendants informed the court that the FTC apparently had decided against challenging the merger since it let the final time extension of the statutorily required waiting period lapse without taking any enforcement action. *See* 15 U.S.C. § 18a(e). The parties also represented that discovery had been completed and that, if necessary, they were ready to proceed with a trial on the merits for permanent injunctive relief.

In considering Bigelow's claim that the proposed combination of the country's two largest producers of herbal tea would substantially lessen competition and tend to create a monopoly, the district court was asked to decide as a matter of law whether a competitor, who faces the prospect of competing against an alleged monopolist controlling 84% of the relevant market, has sufficiently demonstrated a threat of "antitrust injury" to establish standing under section 16 of the Clayton Act. *See Cargill*, 479 U.S. at 113, 107 S.Ct. at 493; *Brunswick*, 429 U.S. at 489, 97 S.Ct. at 697–98. The district court held that Bigelow failed to raise a genuine issue of material fact with respect to whether it was threatened with antitrust injury. While the court indicated that a post-acquisition market share of 84% was "more than sufficient to establish a *prima facie* showing of 'monopoly power,'" 689 F.Supp. at 79; *see United States v. Waste Management, Inc.*, 743 F.2d 976, 981 (2d Cir.1984), it concluded

that "the mere fact that Lipton will possess monopoly power after the proposed acquisition is not a sufficient showing that Lipton will exercise that power in a way that will cause injury to Bigelow." 689 F.Supp. at 79; *see Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 275 (2d Cir.1979) ("mere possession of monopoly power does not *ipso facto* condemn a market participant"), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Relying on the Fifth Circuit's observation in *Phototron Corp. v. Eastman Kodak Co.,* 842 F.2d 95 (5th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988) that the Supreme Court's decision in *Cargill* "has imposed significant barriers to competitor attempts to enjoin merger transactions," *id.* at 102, the district court found plaintiff's allegations of the threat of injury resulting from anticompetitive or predatory activity to be merely speculative. In the court's judgment, absent some evidence of past instances of predatory pricing or present intent to engage in predatory behavior following the merger, plaintiff's claim for injunctive relief under section 16 of the Clayton Act must fail. Accordingly, the district court granted defendants' motion for summary judgment.

Following the entry of judgment in favor of defendants, plaintiff immediately filed a notice of appeal and requested a stay pending appeal from the district court. The court denied the stay pending appeal but preserved the status quo until this court could rule on Bigelow's motion for a stay. On June 21, 1988, this court heard argument on plaintiff's motion and ordered from the bench that a stay be granted during the pendency of this appeal. We heard oral argument on the merits of Bigelow's appeal on July 21, 1988.

Subsequent to oral argument, on September 12, 1988, the court was informed by counsel for defendants that Kraft had elected to cancel the proposed sale to Lipton of Celestial pursuant to the terms of a purchase agreement between Kraft and Lipton. Defendants thereupon moved to dismiss the appeal as moot since "[t]he transaction at issue—the acquisition by Lipton of Celestial Seasonings from Kraft —has been abandoned by Kraft [who] has sold Celestial Seasonings to another group not presently in the tea or herb[al] tea business." The moving papers indicated that on September 12, 1988, Kraft entered into an agreement with an investment unit of Vestar Capital Partners, Inc. ("Vestar"), a firm specializing in leveraged buyouts, for a management-led buyout of Celestial.

On October 3, 1988, after consideration of the motion to dismiss the appeal and supporting and opposition papers filed together therewith, we granted the motion subject to agreement by the parties to reasonable conditions terminating the appeal. After the parties were unable to agree to reasonable conditions, we denied defendants' motion to dismiss the appeal as moot on November 1, 1988. At that time, we indicated that in our judgment the case was not moot given the uncertainty of cessation of the alleged anticompetitive activity against Bigelow. Thereafter, defendants moved for reconsideration of the denial of their previous motion to dismiss the appeal on the ground that the management-led buyout of Celestial closed on November 1, 1988. On November 22, 1988, we denied the motion for reconsideration.

## DISCUSSION

I. *Mootness.*

A basic tenet of federal jurisdiction is that when a court is presented with issues that "are no longer 'live' " or when the parties "lack a cognizable interest in the outcome," the case is moot and therefore outside the court's jurisdictional authority. *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); *accord Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed. 2d 353 (1982) (per curiam); *see* U.S. Const. Art. III, § 2 (limiting judicial power to actual cases and controversies). The case must be "live" at every stage of the proceeding, including the appeal. *See United States v. Munsingwear,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). A recognized exception to the general rule of mootness is in cases that are "capable of repeti-

tion, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The "capable of repetition, yet evading review" doctrine, as applied in cases other than class actions, is limited, however, to situations in which there is a "reasonable expectation" or "demonstrated probability" that the same controversy will recur involving the same complaining party. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam); *accord Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183; *Jefferson v. Abrams*, 747 F.2d 94, 96–97 (2d Cir.1984). Nevertheless, it is also well settled that "voluntary cessation of allegedly illegal conduct ... does not make [a] case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). In such circumstances, there may very well remain a controversy to be settled since a defendant "is free to return to his old ways." *Id.* While the case may still be moot if the defendant can demonstrate that there is no "reasonable expectation" the same controversy will recur, *id.* at 633, 73 S.Ct. at 898; *see United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (1945) (L. Hand, *J.*), the defendant's burden in this regard "is a heavy one." 345 U.S. at 633, 73 S.Ct. at 897.

In the instant case, defendants contend that the Lipton/Celestial transaction has been abandoned, and they represent that Lipton is not contemplating any new effort to acquire Celestial. Kraft maintains that neither Lipton nor Unilever invested in or participated in any way in the management-led buyout of Celestial. Bigelow responds by arguing that the claimed abandonment of the Celestial acquisition was a unilateral action taken for the deliberate purpose of evading a possible adverse decision by this court. According to Bigelow, there is a "reasonable expectation" that the alleged violations of the antitrust laws will recur and in no sense has the Lipton/Celestial transaction been irrevocably abandoned. In view of the fact that defendants have not disclosed who the ultimate real parties in interest to the "new" Celestial might be and the fact that the apparent

discontinuance of the challenged activity is the result of the intervention of a third party, *i.e.*, Vestar, plaintiff takes the position that there is more than a "mere" or "abstract" possibility that Lipton will again seek to acquire Celestial. *Cf. First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 774–75, 98 S.Ct. 1407, 1414–15, 55 L.Ed.2d 707 (1978); *Weinstein*, 423 U.S. at 149, 96 S.Ct. at 348–49; *W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897; *Trane Co. v. O'Connor Securities*, 718 F.2d 26, 27 (2d Cir.1983). We agree.

Defendants have not satisfied us that the in-house buyout of Celestial is the sort of arms-length transfer that removes the alleged threat of combination facing Bigelow. While defendants assert that Bigelow's fears of a revival of the Lipton/Celestial transaction is "wholly hypothetical" and that neither Celestial nor Lipton is presently contemplating any such transaction, we note that a disclaimer of intention to revive allegedly unlawful conduct does not suffice by itself to meet defendants' heavy burden in order to render the case moot. *See W.T. Grant Co.*, 345 U.S. at 633, 73 S.Ct. at 897. Lipton states only that it has not "[made] any investment in or ... participate[d] in any other way in the management-led buy-out of Celestial Seasonings." Nowhere in the record, however, has Lipton disavowed any future intention to acquire Celestial. Moreover, the Supreme Court recently has emphasized that a defendant's heavy burden is not met unless it is " '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 108 S.Ct. 376, 386, 98 L.Ed.2d 306 (1987) (quoting *United States v. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968)) (emphasis in *Gwaltney*). When abandonment of challenged conduct seems timed to head off an adverse determination on the merits—particularly when supported by narrowly drawn affidavits containing disclaimers only of present intention to resume allegedly unlawful activity—it cannot be said

that the possibility of repetition of such activity is merely abstractly conceivable. *See W.T. Grant Co.,* 345 U.S. at 632–33 n. 5, 73 S.Ct. at 897 n. 5; *Trane,* 718 F.2d at 27; *see also Upjohn Co. v. American Home Products Corp.,* 598 F.Supp. 550, 555 (S.D.N.Y.1984) (narrowly drawn affidavits claiming abandonment of allegedly wrongful conduct are insufficient to meet defendant's heavy burden); *McNeilab, Inc. v. American Home Products Corp.,* 501 F.Supp. 517, 523 (S.D.N.Y.1980) (same); *Fuchs v. Swanton Corp.,* 482 F.Supp. 83, 90 (S.D.N.Y.1979) (same). Accordingly, because we believe there is more than a "mere possibility" that Celestial may be acquired by Lipton or Unilever and because of the significant public interest involved in having the legality of practices challenged in this case finally settled, *see W.T. Grant Co.,* 345 U.S. at 632, 73 S.Ct. at 897, we conclude that the case is not moot and therefore proceed to a consideration of the question of standing.

II. *Standing.*

■ The issue to be resolved on this appeal is a narrow one: on a motion for summary judgment, does a competitor have standing under the Clayton Act to enjoin the proposed merger of the two largest producers in the relevant market whose post-acquisition market share is more than sufficient to establish a *prima facie* showing of monopoly power and a presumption of illegality? Defendants maintain that even at this preliminary stage of the proceedings, plaintiff has failed to raise a genuine issue of material fact as to whether it is threatened with "antitrust injury." We disagree.

As the district court correctly recognized, to survive a motion for summary judgment the party opposing the motion must provide a factual basis for its allegations so that when all reasonable inferences therefrom are drawn in its favor, " 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " 689 F.Supp. at 78 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)); see *Murray v. NBC, Inc.,* 844

F.2d 988, 992 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Knight v. United States Fire Insurance Co.,* 804 F.2d 9, 11–12 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The threshold issue in an antitrust case brought under section 16 of the Clayton Act is whether the private plaintiff is "threatened [with] loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26, *i.e.,* "threatened loss or damage 'of the type the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.' " *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 113, 107 S.Ct. 484, 491, 93 L.Ed.2d 427 (1986) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977)). Simply stated, in this case we therefore must determine whether plaintiff has raised a genuine issue of material fact sufficient to show a threat of antitrust injury as the result of the proposed merger. *See id.; Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697–98; *see also Volvo North America Corp. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 66 (2d Cir.1988).

Section 7 of the Clayton Act provides in pertinent part that

No person ... shall acquire ... the assets of another person ... where ... the effect of such acquisition *may be* substantially to lessen competition, or *to tend to* create a monopoly.

15 U.S.C. § 18 (emphasis added). Under section 16 of the Clayton Act, a private plaintiff is entitled to sue for injunctive relief "against *threatened* loss or damage" to remedy a violation of section 7. *Id.* § 26 (emphasis added).

In evaluating plaintiff's antitrust claims, the starting point is Lipton's post-acquisition market share. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 343, 82 S.Ct.

1502, 1533–34, 8 L.Ed.2d 510 (1962) ("market share ... is one of the most important factors to be considered when determining the probable effects of the combination on ... competition in the relevant market"). Whether a proposed merger would substantially lessen competition or tend to create a monopoly is determined through findings, for example, "that the relative size of the acquiring corporation ha[s] increased to such a point that its advantage over competitors threaten[s] to be 'decisive.'" *Id.* at 321 n. 36, 82 S.Ct. at 1521 n. 36 (quoting H.R.Rep. No. 1191, 81st Cong., 1st Sess. 8 (1950)). Indeed,

> a merger which produces a firm controlling an undue percentage share of the relevant market, and results in a significant increase in the concentration of firms in that market, is so *inherently* likely to lessen competition substantially that it *must* be enjoined in the absence of evidence clearly showing that the merger is not likely to have such anticompetitive effects.

*United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 363, 83 S.Ct. 1715, 1741, 10 L.Ed.2d 915 (1963) (emphasis added). While market share data alone does not create an irrebutable presumption of illegality, *see Brown Shoe,* 370 U.S. at 322 n. 38, 82 S.Ct. at 1522 n. 38 (market share data must be considered "within an industry framework ...[;] [s]tatistics reflecting the shares of the market controlled by ... the parties to the merger" must be further examined in light of the "structure, history and probable future" of the particular market); *accord United States v. General Dynamics Corp.,* 415 U.S. 486, 498, 94 S.Ct. 1186, 1194, 39 L.Ed.2d 530 (1974), such a presumption can be overcome only by evidence that the market share data gives an "inaccurate account of the acquisition['s] probable effects on competition." *See United States v. Citizens & Southern Nat'l Bank,* 422 U.S. 86, 120, 95 S.Ct. 2099, 2118, 45 L.Ed.2d 41 (1975); *United States v. Waste Management, Inc.,* 743 F.2d 976, 982 (2d Cir.1984). Thus, unless defendants meet their burden of rebutting this presumption, the merger must be enjoined.

The fact that a competitor of parties to a proposed merger is seeking to remedy the alleged anticompetitive conduct does not significantly alter the analysis. Although we must be wary of competitors attempting to obtain antitrust standing based upon prospective loss or damage due to competition for increased market share, *cf. Cargill,* 479 U.S. at 116 & 122, 107 S.Ct. at 492 & 495, we have little doubt that antitrust injury to a competitor can be found when the market share of the merging firms threatens to be decisive. Consequently, not only is the post-acquisition market share of 84% in this case *prima facie* evidence of monopoly power as the district court found, 689 F.Supp. at 79, it also raises a presumption of illegality and of antitrust injury to competitors of the alleged monopolist who are damaged by the " 'type of loss that the claimed violations ... would be likely to cause.'" *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 125, 89 S.Ct. 1562, 1577, 23 L.Ed.2d 129 (1969)).

Relying, as did the district court, on the Fifth Circuit's decision in *Phototron Corp. v. Eastman Kodak Co.,* 842 F.2d 95 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 1996, 100 L.Ed.2d 228 (1988), defendants nevertheless contend that " 'the notion that merely facing the specter of a monopoly is enough to create standing in a competitor is *not* the law.'" Appellees' Brief at 30 (quoting 842 F.2d at 100). *Phototron* involved the proposed merger of the two largest photofinishers in the wholesale photoprocessing market. A competitor of the merging companies challenged the merger, seeking a preliminary injunction barring the impending transaction. The district court determined, solely for the purpose of deciding whether a preliminary injunction should issue, that the resultant market share would range anywhere from 66–85% in the wholesale photofinishing national market and that plaintiff thus had standing to challenge the merger. 687 F.Supp. 1061, 1065–66 & 1069 (N.D.Tex.1988). After specifically finding that Phototron had shown a substantial likelihood of demonstrating antitrust injury regarding its claim under

section 7 of the Clayton Act, *id.* at 1070; *but cf.* 842 F.2d at 98–99 & n. 3 (stating that district court failed to consider likelihood of success on standing issue), the district court granted a preliminary injunction. On appeal, the Fifth Circuit reversed on the authority of the Supreme Court's decision in *Cargill*. The *Phototron* court held that the "facially sensible proposition" that a competitor has standing to challenge a merger creating an alleged monopolist has been "undermined by *Cargill*." 842 F.2d at 100. We do not agree that this is necessarily so.

In *Cargill*, the second largest beef packer in the relevant market was attempting to merge with the third largest competitor in that market. After the proposed merger, the combined market share of the two companies would have been only 20.4%, below the market share of the industry leader whose share was 27.3% and who was not a party to the action. Instead, the fifth-largest beef packer brought an action under section 16 of the Clayton Act to enjoin the prospective merger, and after a *full trial* on the merits, the district court granted permanent injunctive relief. 591 F.Supp. 683 (D.Colo.1983). The Tenth Circuit subsequently affirmed. 761 F.2d 570 (10th Cir.1985). In its consideration of plaintiff's claim of antitrust injury, the Supreme Court concluded that the record evidence "[did] not support a finding of antitrust injury, but only of threatened loss from increased competition." 479 U.S. at 122, 107 S.Ct. at 495. The Court stated that

> the antitrust laws do not require the courts to protect small businesses from the loss of profits due to continued competition, but only against the loss of profits from practices forbidden by the antitrust laws. The kind of competition that [plaintiff] alleges here, competition for increased market share, is not activity forbidden by the antitrust laws.

*Id.* at 116, 107 S.Ct. at 492. The *Cargill* Court went on to explain that plaintiff had failed to allege anticompetitive conduct harmful both to "competitors *and* competition," *id.* at 118, 107 S.Ct. at 493, and that the post-merger market share was insuffi-

cient in any event to support an inference of predatory activity following the merger. *Id.* at 119 n. 15, 107 S.Ct. at 494 n. 14. Specifically, the Court expressed doubt that a claim of predatory pricing, even had it been advanced by plaintiff, would have been supported by the record given the lack of market power to engage in such a scheme. *Id.* Accordingly, the Supreme Court held that the district court's issuance of a permanent injunction was inappropriate since plaintiff was unable to prove at trial a threat of antitrust injury.

As the district court in *Phototron* recognized,

> [t]he linchpin of the *Cargill* decision is the requirement that a plaintiff seeking to *permanently* enjoin an allegedly unlawful business combination must allege and prove an actionable antitrust injury which results from the proscribed combination.

687 F.Supp. at 1067 (emphasis in original). The Fifth Circuit in reversing the judgment of the district court, however, quoted Justice Stevens' dissent in *Cargill* that the Supreme Court will not grant relief if there is merely " 'a significant probability that the merger will adversely affect competition in the market in which the plaintiff must compete.' " 842 F.2d at 100 (quoting 479 U.S. at 123, 107 S.Ct. at 496 (Stevens, *J.*, dissenting)). While this may or may not be the law as it relates to the granting of permanent injunctive relief after a plenary trial on the merits, certainly a demonstrated probability at the preliminary injunction stage that a merger will adversely affect competition in the relevant market is sufficient in order to survive a motion for summary judgment. To the extent that *Phototron* requires *proof* of antitrust injury on an application for a preliminary injunction, we decline to follow its reasoning.

There is no question, as recognized by the district court in this case and by the Fifth Circuit in *Phototron*, that *Cargill* indeed "has imposed significant barriers to competitor attempts to enjoin merger transactions." *Phototron*, 842 F.2d at 102; *see* 689 F.Supp. at 82. If a competitor is attempting to establish standing to chal-

lenge a merger based solely upon a claim of threatened injury from predatory pricing, it faces the formidable task of convincing a court that the alleged antitrust injury is something other than mere losses due to "vigorous competition." *Cargill*, 479 U.S. at 116, 107 S.Ct. at 492; *see Brown Shoe*, 370 U.S. at 320, 82 S.Ct. at 1521 (antitrust laws were enacted for "the protection of *competition*, not *competitors*") (emphasis in original). Because the weight of economic evidence indicates that "predatory pricing schemes are rarely tried, and even more rarely successful," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 589, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986), and commentary cited therein, allegations of injury from such practices accordingly will be found to occur "only infrequently." *Cargill*, 479 U.S. at 121, 107 S.Ct. at 495. This is particularly true when the post-acquisition market share is insufficient to support an inference that predatory activity is likely to occur. It is important to note, however, that although the plaintiff in *Cargill* was unable to demonstrate a threat of antitrust injury, the Court expressly rejected the position of the United States, appearing in the case as *amicus curiae*, that there be a *per se* rule denying a competitor standing for "necessarily speculative" claims of post-acquisition predatory pricing. *Id.* at 120–21, 107 S.Ct. at 495. In so holding, the *Cargill* Court explained that "[i]t would be novel indeed for a court to deny standing to a party seeking an injunction against threatened injury merely because such injuries rarely occur." *Id.* at 121, 107 S.Ct. at 495.

While the Supreme Court's decision in *Cargill*, therefore, clearly has made competitor attempts to enjoin mergers more difficult, it has not rendered such attempts impossible. In our view, this case represents one of those instances envisioned by Congress where a competitor has standing under the Clayton Act "to arrest the creation of ... [a] monopol[y] in [its] incipiency and before consummation." S.Rep. No. 698, 63rd Cong., 2d Sess 1 (1914); *accord* S.Rep. No. 1775, 81st Cong., 2d Sess. 4–5 (1950); *Brown Shoe*, 370 U.S. at 317, 82 S.Ct. at 1520; *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 597, 77 S.Ct. 872, 879, 1 L.Ed.2d 1057 (1957); *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 597 F.2d 814, 816 (2d Cir.1979) (per curiam).

Nevertheless, we are mindful, as was the Fifth Circuit in *Phototron*, that "[g]iven the onerous effects of granting a preliminary injunction ..., more than mere pleading is necessary to establish standing." 842 F.2d at 98; *see Buffalo Forge Co. v. Ampco–Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981); *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 870 (2d Cir.), *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974). Even at the summary judgment stage, "antitrust law limits the range of permissible inferences [that may be drawn] from *ambiguous* evidence." *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1357 (emphasis added). In the instant case, unlike in *Cargill*, however, there is nothing ambiguous about the post-merger market share. *See* R. Bork, *The Antitrust Paradox* 221 & 406 (1978) (antitrust law should strike at horizontal mergers "creating very large market shares (those [over 60 or 70%] that leave fewer than three significant rivals in any market)").

That is not to say that an 84% market share is a *per se* violation of section 7 of the Clayton Act. Market share data, like any economic evidence, must be evaluated with care. *See United States Dep't of Justice 1984 Merger Guidelines*, 49 Fed. Reg. 26823; *see also Cargill*, 479 U.S. at 121 n. 17, 107 S.Ct. at 495 n. 17; *Matsushita*, 475 U.S. at 593–94, 106 S.Ct. at 1360. As we previously have recognized, market share data that does not accurately reflect probable market power may not be relied upon to invalidate a merger. *See United States v. Waste Management, Inc.*, 743 F.2d 976, 984 (2d Cir.1984). At a plenary hearing on an application for a permanent injunction, Lipton is free to argue, for example, that the "hot beverage" market rather than the "herbal tea" market is the relevant market. Lipton claims here that there is "dispositive" economic evidence indicating that Bigelow, Lipton, Celestial and

a host of others actually compete in the hot beverage market. If that is the case, Lipton's alleged post-acquisition 84% market share of herbal tea will indeed "dissolve[ ] into insignificance." Appellees' Brief at 10 n. 8. That, however, is a judgment to be made by the district court following a full trial on the merits after giving due consideration to market share data, evidence concerning Lipton's capacity to absorb the market shares of rival competitors, barriers to entry and other factors.

At this stage of the proceedings, defendants concede that the relevant market is "herbal tea." 689 F.Supp. at 79 n. 3; *cf. Phototron*, 687 F.Supp. at 1063 (indicating that parties disputed whether *wholesale* photofinishing or *all* sources of photofinishing was relevant market for purposes of issuing preliminary injunction), *rev'd*, 842 F.2d at 97 (same). Market share data—assuming that it is accurate and indicative of substantial market power to eliminate competition—constitutes sufficient evidence, in and of itself, of antitrust injury to a competitor to create a genuine issue for trial. *See Tasty Baking Co. v. Ralston Purina, Inc.*, 653 F.Supp. 1250, 1265 (E.D.Pa.1987) ("[n]othing else need be shown to demonstrate that defendants' acquisition impermissibly creates a probable anticompetitive effect"); *id.* at 1274 ("[a]ll the predatory intent needed in this case is demonstrated ... by the Clayton Act § 7 presumptions ... [because], if realized, [they] would constitute antitrust injury"); *see also* P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 340.2g, at 365–66 (Supp.1988); *cf. Alberta Gas Chemicals Ltd. v. E.I. du Pont de Nemours & Co.*, 826 F.2d 1235, 1246 (3d Cir.1987) (*de minimis* foreclosure of competition in already heavily concentrated industry does not establish violation of § 7 or resultant antitrust injury), *cert. denied*, —— U.S. ——, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Bigelow therefore is entitled to the benefit of all reasonable inferences that follow from the alleged deliberate acquisition by merger of substantial monopoly power in the herbal tea market and to a presumption that following the merger Lipton would be likely to eliminate competition in that market by, *inter alia,* reducing Bigelow's access to supermarket shelf space for its products.

## CONCLUSION

Accordingly, because we find that plaintiff has demonstrated a substantial likelihood of sustaining "antitrust injury," the judgment of the district court granting defendants' motion for summary judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.