**E.I. DUPONT DE NEMOURS & CO.,**
**Movant–Plaintiff–Appellant,**

v.

**INVISTA B.V. and Invista S.A.R.L.,**
**Respondents–Defendants–**
**Appellees.**

**Docket No. 06–4082–cv.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 28, 2006.

Decided: Dec. 21, 2006.

Robert J. Dwyer, Boies, Schiller & Flexner, LLP, New York, NY, for Movant.

Joseph D. Pizzurro, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, N.Y. (Benard V. Preziosi, Jr. & Scott D. Fischer, of counsel), for Respondents.

Before: JACOBS, Chief Judge, WALKER, Circuit Judge.*

DENNIS JACOBS, Chief Judge:

E.I. Dupont de Nemours & Co. ("Dupont") moves to dismiss as moot its appeal from the decision of the United States District Court for the Southern District of New York (Casey, J.) denying Dupont a

---

* Judge Raggi, originally a member of the panel, recused herself prior to oral argument. Therefore, this motion is decided by the two remaining members of the panel pursuant to 2d Cir. R. § 0.14.

preliminary and permanent injunction barring INVISTA S.A.R.L. and INVISTA B.V. (together, "Invista") from acquiring the business of a third company. Now that the contemplated transaction has been derailed, Dupont argues that its own appeal is moot, and (not at all incidentally) that the district court's order must be vacated (and the case remanded with instructions to dismiss).

## BACKGROUND

Dupont, which developed nylon, continues to produce nylon products today, including nylon resin. Dupont sold its nylon *fiber* business to Invista in 2003 pursuant to a purchase agreement that prohibits Invista (until 2009) from acquiring any company in the nylon resin business (*i.e.*, one that does more than ten percent of its business in that line).[1] The distinction between fiber and resin is irrelevant to the disposition of this motion; interested readers may consult Judge Casey's thorough opinion. *See E.I. DuPont De Nemours & Co. v. INVISTA B.V.*, No. 06 Civ. 4682, 2006 WL 2389382 (S.D.N.Y. Aug. 18, 2006).

In September 2005 Invista began negotiating with William Barnet & Sons, LLC ("Barnet") to acquire Barnet's business. In May 2006 Invista and Barnet signed a letter of intent concerning the acquisition. Dupont commenced this lawsuit on June 19, claiming that more than ten percent of Barnet's business was related to nylon resin and that Invista's intended acquisition thereby would violate the purchase agreement. Dupont moved for injunctive relief; the district court denied the motion on August 18; and Dupont filed the pending appeal.

Eight days after the district court's decision, Invista and Barnet "agreed at that time not to go forward with the transaction...." (Burmeister Aff. ¶ 6). During September and October, Invista "continued to be interested in buying some portion of Barnet's business" and the parties met to "discuss a variety of business issues including the possibility of an alternative acquisition." (*Id.* ¶¶ 8, 9). However, by mid-October the parties agreed to "discontinue negotiations on the overall acquisition of Barnet as originally contemplated" and were "not in active discussions." (*Id.* ¶ 10). Invista continued "to evaluate and consider certain alternative transactions for the future" and "the door was left open" for future transactions. (*Id.*). But according to an October 13 email from a Barnet executive, while "the door is always open" to discuss "things that make sense for both [B]arnet and [I]nvista," Barnet wished to "focus[ ] back on [its] business as an independent company with [B]arnet being a customer of [I]nvista' s or ... a supplier to [I] nvista." (*Id.* ¶ 11).

Invista "continues to consider acquiring some or all of Barnet's assets," and is "actively considering the purchase of other [unnamed] companies" in a similar line. (*Id.* ¶¶ 13, 14). One Invista executive has explained, "The fact that at this time the transaction will not occur as anticipated has not led me to conclude that [Invista] will not again seek to acquire some or all of Barnet's assets." (*Id.* ¶ 13).

## DISCUSSION

■ The federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions law. *See* U.S. Const. Art. III, § 2; *see also R.C. Bigelow, Inc. v. Unilever N.V.*,

---

1. This summary description of terms is included solely as background to the discussion that follows. The scope and force of the agreement were at issue in the district court, and we express no opinion on the district court's conclusions on the matter.

867 F.2d 102, 105–06 (2d Cir.1989). A "case must be 'live' at every stage of the proceeding, including the appeal." *R.C. Bigelow*, 867 F.2d at 105.

Invista's plan to acquire Barnet, as memorialized in the May 2006 letter of intent, has been dropped by both parties. Accordingly, there is no longer a live dispute as to whether, given the nature and extent of Barnet's nylon resin business, the purchase agreement between Dupont and Invista would permit Invista to make the acquisition. A justiciable case or controversy is no longer presented.

Invista invokes the principle that "voluntary cessation of allegedly illegal conduct ... does not make [a] case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), *quoted in R.C. Bigelow*, 867 F.2d at 106, and contends that this appeal is not moot because the negotiations were terminated by it voluntarily. We disagree. True, a defendant cannot avoid appellate review of a favorable decision by temporarily suspending its challenged activity while remaining "free to return to his old ways." *W.T. Grant*, 345 U.S. at 632, 73 S.Ct. 894. But that doctrine aims to eliminate the incentive for a defendant to strategically alter its conduct in order to prevent or undo a ruling adverse to its interest. *See Murphy v. Benson*, 270 F.2d 419, 421 (2d Cir.1959) (defendant's "self-interest" in ceasing conduct is "highly influential" factor in determining mootness); *see also Fed'n of Adver. Indus. Representatives v. City of Chicago*, 326 F.3d 924, 929 (7th Cir.2003) (examining defendant's motive in ceasing challenged action); *Pub. Utils. Comm'n of the State of Cal. v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1460 (9th Cir.1996) (refusing to apply voluntary cessation doctrine because cessation was "motivated by economic/business considerations, not th[e] litiga-tion"); *cf. R.C. Bigelow*, 867 F.2d at 106 (discussing *defendant's* burden to show that there is no "reasonable expectation" its actions will recommence). The doctrine does not apply here.

Invista's contemplated acquisition of Barnet succumbed to a breakdown in negotiations; it was not abandoned as a strategic litigation ploy. The doctrine of voluntary cessation will not preserve an otherwise moot claim where, as here, the party that alleged wrongdoing claims the action is moot, and where the cessation by the alleged wrongdoer was not "a unilateral action taken for the deliberate purpose of evading a possible adverse decision by this court." *R.C. Bigelow*, 867 F.2d at 106.

In the alternative, Invista argues that a future transaction with Barnet is imaginable and that its openness to other transactions involving "substantially similar, if not identical" companies presents a live dispute regarding the terms of the purchase agreement. These contingencies are too speculative to avoid mootness.

Potential future conduct can sustain a justiciable case or controversy if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). While Invista and Barnet agree that the door is not barred and sealed against possible future negotiations, those negotiations are not in the offing, and any potential transaction is a mere prospect. Invista claims it has not resolved to forgo an attempt to acquire Barnet. (Burmeister Aff. ¶ 13). But that is a far cry from saying that such an attempt will be made, and that the inchoate terms of such a future transaction can furnish a sufficient basis for consider-

ation and a ruling by the district court. Nor does the prospect of potential transactions with other companies suffice; the record contains no mention of any company that Invista is actively considering acquiring or with which Invista is currently negotiating, let alone information on the form of such a transaction or the lines of business that would be acquired. We see no justiciable case or controversy; this appeal is moot.[2] *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993) (no case or controversy because there was "no mention of any pending environmental claims as to any third-party site in the pleadings or record").

The question now is whether to vacate the district court's order denying Dupont's request for injunctive relief. If the district court's order were allowed to stand, its interpretation of the purchase agreement would presumably bind Invista and Dupont if any future litigation arises concerning a similar transaction controlled by the same contract terms.

 The decision to vacate "depends on the equities of the case"; and while "the appellant has no automatic right to vacatur," we are generally "liberal in granting" it. *Russman*, 260 F.3d at 121. "In considering whether vacatur is [ ] appropriate, our primary concern is the fault of the parties in causing the appeal to become moot." *Id.* As discussed above, this appeal has been mooted through no fault or machination of Dupont. Accordingly, it would be unfair to require that

Dupont "acquiesce in the judgment" of the district court. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Such acquiescence would allow Invista to pursue transactions similar to the Barnet transaction, without fear of legal challenge, on the basis of a district court decision that Dupont was unable to challenge on appeal. Equity requires a different result; the district court's decision will be vacated.

## CONCLUSION

For the foregoing reasons, we dismiss the appeal, vacate the district court's order, and remand with instructions to dismiss the action.

---

2. The likelihood of a future attempt by Invista to acquire Barnet would bear upon whether this dispute is capable of repetition, and therefore possibly justiciable under the exception to mootness for cases capable of repetition yet evading review. *See Russman v. Bd. of Educ.*, 260 F.3d 114, 119 (2d Cir.2001). Invista does not argue that the exception applies. In any event, but for the breakdown in negotiations between Invista and Barnet, this

Court would have been quite capable of reviewing the district court's decision within the time frame of a corporate negotiation or transaction. Accordingly, it appears unlikely that the second prong of the exception would be satisfied.