**NEW YORK CIVIL LIBERTIES UNION Plaintiff,**

v.

**David GRANDEAU, Executive Director of the New York Temporary State Commission on Lobbying, Defendant.**

**No. 03 Civ. 8665(LAP).**

United States District Court,
S.D. New York.

Feb. 24, 2004.

---

Christopher T. Dunn, New York Civil Liberties Union, New York City, for Arthur Eisenberg, New York Civil Liberties Union

Eliot Spitzer, Office of New York State Attorney, New York City, for David Grandeau, Executive Director of New York State Temporary State Commission on Lobbying.

## MEMORANDUM OPINION AND ORDER

PRESKA, District Judge.

Plaintiff New York Civil Liberties Union ("NYCLU") brings this action against David Grandeau in his capacity as Executive Director of the New York State Commission on Lobbying ("Commission") seeking a declaratory judgment and injunctive relief for violations of the First Amendment of the United States Constitution and 42 U.S.C. § 1983. By notice of motion dated December 15, 2003, Mr. Grandeau moved to dismiss the complaint for lack of subject matter jurisdiction on *Younger v. Harris* abstention grounds because the Commission's proceeding was an "ongoing" one. Four days later, defendant's reply memorandum urged dismissal on mootness grounds because the Commission had closed its case. For the reasons set forth below, Mr. Grandeau's motion to dismiss is denied.

### Background

In or about March of 2003, a billboard appeared in the Albany area with the following text:

Welcome to the mall. You have the right to remain silent. Value free speech.

(Compl., dated October 30, 2003, Ex. A (the "Billboard").) At the bottom, "www.nyclu.org" appeared. The NYCLU is a registered lobbyist in New York State and regularly makes filings with the Commission. (Affidavit of Donna Lieberman,

sworn to December 17, 2003 (the "Lieberman Aff.") ¶¶ 4–5.)

By letter dated October 23, 2003, the Commission demanded that the NYCLU amend its semi-annual report by November 7, 2003 to reflect lobbying expenses incurred in connection the Billboard if any such expenses were so incurred. (Affidavit of Robert A. Perry, sworn to Dec. 11, 2003 (the "Perry Aff.") Ex. B.) On November 3, 2003, the NYCLU filed its complaint in this action, seeking a declaratory judgment and injunctive relief. Just two days later, defendant reversed position: by letter dated November 5, 2003, Mr. Grandeau informed the NYCLU that the Commission was withdrawing its request based on a determination that the Billboard was not paid for by the NYCLU. (Perry Aff. Ex. C.) By letter dated November 6, 2003, the NYCLU responded to the Commission's letter stating that the NYCLU had in fact incurred expenses in connection with the Billboard. (Affirmation of Christopher T. Dunn, sworn to on December 17, 2003 (the "Dunn Aff.") Ex. B.) Counsel replied by letter later that day stating that the Commission was not seeking any filing or information from the NYCLU concerning the matter identified in the October 23, 2003 letter and stating that "we continue to believe the case is moot." (Dunn Aff. Ex. C.)

On or about November 20, 2003, the NYCLU learned of a published agenda for the December 3, 2003 meeting of the Commission listing NYCLU as an item involving "false filing" and contacted counsel for the Commission about the item. (Dunn Aff. ¶¶ 10–11.) By letter dated November 25, 2003, counsel informed the NYCLU that the Commission reconfirmed that it is not seeking any reporting by or from the NYCLU in connection with the Billboard and that "the December 3, 2003 Commission agenda item is not for the non-report-ing of these [B]illboard expenses." (Dunn Aff. Ex. D.) Despite this representation, at the December 3, 2003 meeting, Mr. Grandeau announced that he intended to send a letter to the NYCLU concerning the Billboard. (Perry Aff. ¶ 13.) The very next day, by letter dated December 4, 2003, the Commission wrote to the NYCLU stating that while its investigation disclosed that the NYCLU did not pay for the Billboard, if the NYCLU continued to insist that the NYCLU did in fact pay for the Billboard, the Commission requested that the NYCLU provide a copy of the relevant invoice and cancelled check. The letter also advised that it was the Commission's position that the use of the Billboard as part of a lobbying campaign would make the cost of the Billboard a reportable lobbying expense if paid for by a registered lobbyist. (Dunn Aff. Ex. E.)

On December 15, 2003, defendant Grandeau filed a motion to dismiss for lack of subject matter jurisdiction on abstention grounds. In his supporting memorandum, the defendant stated that "[t]he Commission's proceeding is an 'ongoing' one" and, therefore, urged abstention. (Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, dated December 15, 2003.)

On December 17, 2003, the NYCLU filed a motion for a preliminary injunction and opposition to the motion to dismiss. Accompanying that motion was the affidavit of Donna Lieberman, which stated in part that "[t]he NYCLU received an invoice for the [B]illboard and paid that invoice with an NYCLU check." (Lieberman Aff. ¶ 16.) Once again, just two days later, defendant reversed position: in his reply memorandum dated December 19, 2003, defendant stated that "because [the] NYCLU had failed to provide to the Commission documentary evidence which

would support its claim that it did pay for the [B]illboard, and because the Commission is satisfied with the results of its own investigation indicating that [the] NYCLU did not make such a payment," the Commission had closed its case and it was unnecessary for this Court to consider abstention because the case was now moot. (Defendant's Reply Memorandum on Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, dated December 19, 2003.) The reply memorandum was accompanied by the Declaration of Ralph P. Miccio, legal counsel to the Commission, which stated in part:

> The Commission's interest was solely whether NYCLU paid for the [B]illboard. Based upon the evidence obtained by the Commission in its investigation, the Commission is satisfied that NYCLU did not pay Lang Media for the placement of the [B]illboard. Because NYCLU has declined to provide either to the Commission or this Court any documentary evidence which would contradict the results of the Commission's investigation, the Commission is convinced from its own investigation that NYCLU did not pay for the [B]illboard. Accordingly, *the Commission makes no request of NYCLU for any further information*, reporting or supplemental reporting of any kind regarding the [B]illboard, *and considers this matter to be closed.*

(Declaration of Ralph P. Miccio, executed on December 19, 2003 (the "Miccio Decl.") ¶ 5 (emphasis added).)

At a conference before this Court on December 23, 2003, the parties agreed to submit additional briefing on the mootness issue. Oral argument was held on February 9, 2004.

### Discussion

■ In *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.,* 528

U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), the Supreme Court reaffirmed that "the standard ... for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 190, 120 S.Ct. 693 (quoting *United States v. Concentrated Phosphate Export Assn., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)); *see also Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 222, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000) (same). The party asserting mootness bears the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (internal quotations and citations omitted). The Court of Appeals has held that "a disclaimer of intention to revive allegedly unlawful conduct does not suffice by itself to meet the heavy burden in order to render the case moot." *R.C. Bigelow, Inc. v. Unilever,* 867 F.2d 102, 106 (2d Cir.1989). More specifically:

> When abandonment of challenged conduct seems timed to head off an adverse determination on the merits—particularly when supported by narrowly drawn affidavits containing disclaimers only of present intention to resume allegedly unlawful activity—it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable.

*Id.* at 106–07.

■ Four factors persuade me that defendant Grandeau has not met his burden under this standard: (1) the contradictory positions taken by the Commission in this matter; (2) the disputed basis on which the Commission has withdrawn its request/demand for filing regarding the Billboard; (3) the appearance that the

Commission's withdrawals have been in response to litigation brought by the NYCLU; and (4) the narrowly drawn "present intention" declaration provided by the Commission in support of the present motion.

First, the contradictory past behavior of the Commission in this matter demonstrates that "the possibility of repetition of such activity" is *more than* "merely abstractly conceivable." *Id.* at 107. After withdrawing its first request for information on November 5, 2003, the Commission took the position that the case was moot. The Commission continued this position even after the NYCLU was listed as an item on the December 3, 2003 published agenda for the Commission and, indeed, represented to the NYCLU that the agenda item was not for the non-reporting of Billboard expenses. Contrary to the representation, however, Mr. Grandeau stated at that meeting his intention to send the NYCLU a letter concerning the Billboard and did so the following day.

The appearance of an active investigation continued when on December 15, Mr. Grandeau filed a motion to dismiss based on abstention grounds. Only four days later, the Commission reversed itself once again stating that the Commission had closed its case and that this action was now once again moot. In light of the Commission's repeated reversals of position, its voluntary cessation (for the moment) of its past behavior is wholly insufficient to meet its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *New York Public Interest Research Group v. Whitman,* 321 F.3d 316, 327 (2d Cir.2003).[1]

Second, the Commission stated that its voluntary cessation was contingent upon its determination that "the [B]illboard in question was not paid for by NYCLU; and as such should not be included as a reportable lobbying expense." (Perry Aff., Ex. C.) Indeed, the Commission's "reopening" of its investigation by the December 4, 2003 request stated that while the Commission's own investigation disclosed that the NYCLU did not pay for the placement of the Billboard, "[i]f [the NYCLU] continue[s] to insist that [it] did in fact pay for the [B]illboard, [it should] provide a copy of the relevant invoice from Lang Media and cancelled check of the NYCLU at [its] earliest convenience." (Dunn Aff., Ex. E.) This "reopening" occurred despite the fact that the NYCLU informed the Commission by letter dated November 6, 2003 that "the NYCLU incurred expenses in sponsoring the [B]illboard ... [and] it did not include those expenses in the report" and the Commission's response later that day stated that it nevertheless "continue[d] to believe the case is moot."

The Commission's determination continues to be contested by the NYCLU. In addition to the November 6, 2003 letter by

1. Defendant argues in a letter submission, dated February 9, 2004, that dismissal is required where there is no reason to think that the defendant intends to return to its prior regulatory regime, citing *Lamar Advertising of Penn, LLC v. Town of Orchard Park,* 356 F.3d 365, 2004 WL 187148 (2d Cir.2004) and *Granite State Outdoor Advertising, Inc. v. Town of Orange,* 303 F.3d 450 (2d Cir.2002). However, these cases are inapposite. Even assuming *arguendo* that the Commission's rules are analogous to a town's ordinances, the Commission has never repealed any rule relevant to this case or determined that even if the NYCLU had paid for the Billboard, it would not be required to report such expenses under the Lobbying Act. In fact, at oral argument, counsel for Mr. Grandeau argued that the Commission's position on its rule has remained entirely consistent throughout the course of this litigation, that is, that if the NYCLU paid for the Billboard, it is required to report on it. (Tr. of Oral Argument held on February 9, 2004, at 10–11.)

the NYCLU, the affidavit of Donna Lieberman, Executive Director of the NYCLU, plainly states that "[t]he NYCLU received an invoice for the [B]illboard and paid that invoice with an NYCLU check." (Lieberman Aff. ¶ 16.) Because the Commission has withdrawn its requests based on a determination that the NYCLU openly contests (and because the NYCLU is in the best position to know whether or not it has paid for the Billboard), the Commission is free to reopen the matter (as it has done once before) should it determine that the NYCLU paid for the Billboard.[2] The Commission's reliance on the questionable determination that the NYCLU did not pay for the Billboard makes repetition of the challenged activity more than "merely abstractly conceivable."

Third, it appears that each time the NYCLU has sought recourse in this Court, the Commission has changed its position to "moot" the cause of action. For example, when the complaint was filed on November 3, 2003, just two days later the Commission notified the NYCLU that it was withdrawing its request. Next, when the NYCLU filed a motion for a preliminary injunction in response to the Commission's "reopening" of its investigation, the Commission once again reversed its position just two days later by stating that it considered the matter closed. Such reversals lend themselves to the inference that the actions were a deliberate attempt to manufacture mootness and thus evade a possible adverse decision by this Court. Where the withdrawal "seems timed to head off an adverse determination on the merits," that withdrawal is insufficient to carry defendant's burden. *Bigelow*, 867 F.2d at 106.

Fourth, Mr. Miccio's declaration does little more than state the "present intention" of the Commission not to make a request of the NYCLU for any further information *because* the Commission has satisfied itself that the NYCLU did not pay for the Billboard. The Court of Appeals has held:

> When abandonment of challenged conduct seems timed to head off an adverse determination on the merits—particularly when supported by narrowly drawn affidavits containing disclaimers only of present intention to resume allegedly unlawful activity—it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable.

*Bigelow*, 867 F.2d at 106–07. The language of the declaration is stated in the present tense, for example, "the Commission *is satisfied* that NYCLU did not pay [for the Billboard]" and "*[a]ccordingly,* the Commission *makes no request* of NYCLU for any further information ... and *considers* this matter to be closed." Not only is the language clearly that of "present intent," but this "present intent" is contingent on the Commission's determination that the NYCLU did not pay for the Billboard, which the NYCLU (the party in a position to know) has openly stated it did. As in *Bigelow*, "[n]owhere in the record ... has [defendant] disavowed any future intention [to resume the challenged conduct]." *Bigelow*, 867 F.2d at 106.

### Conclusion

For all of these reasons, defendant has not carried his burden of demonstrating that it is "absolutely clear" that the challenged conduct "could not reasonably be expected to recur."

---

2. Indeed, when questioned at oral argument as to what would happen if the Commission determined that the NYCLU actually paid for the Billboard, counsel for defendant replied "I don't know the answer to that. I can't preclude it, but I don't know the answer to that." (Tr. of Oral Argument held February 9, 2004, at 14.)

Counsel shall confer and inform the Court by letter how they wish to proceed.