**NEW YORK CIVIL LIBERTIES UNION, Plaintiff,**

v.

**David GRANDEAU, Executive Director of the New York Temporary State Commission on Lobbying, Defendant.**

**No. 03 Civ. 8665 LAP.**

United States District Court, S.D. New York.

Sept. 28, 2006.

Arthur Eisenberg, Christopher T Dunn, New York Civil Liberties Union, New York, NY, for plaintiff.

Bruce Burton McHale, Office of New York State Attorney General, New York, NY, Eliot Spitzer, Attorney General States

of New York, New York, NY, for defendant.

### MEMORANDUM AND ORDER

PRESKA, District Judge.

The New York Civil Liberties Union ("Plaintiff" or "NYCLU") brings this action against David Grandeau in his capacity as Executive Director of the New York Temporary State Commission on Lobbying ("Defendant" or "Commission") alleging that the Commission's reporting requirements violate the First Amendment and 42 U.S.C. § 1983. Plaintiff seeks a declaration that the Defendant has violated the First Amendment by requiring the NYCLU to report as lobbying activity "advocacy that makes no mention of pending legislation nor exhorts any action with respect to pending legislation." (Compl.¶ 41). Plaintiff seeks to enjoin the Commission from enforcing such reporting requirements. (Id.). The parties now cross-move for summary judgment. For the reasons stated herein, the action is dismissed as moot.

### I. Background

In March 2003, Stephen Downs was arrested at the Albanyarea Crossgates Mall for wearing a t-shirt that read, "Give Peace a Chance," in reference to the impending war with Iraq. (Pl. 56.1 Stmt ¶ 11). In the aftermath of the arrest, the NYCLU was approached to offer its assistance in placing a billboard promoting free speech rights (the "Billboard") near the mall. (Id. ¶ 15). The NYCLU assisted with developing the text for the Billboard, which read, "Welcome to the mall. You have the right to remain silent. Value free speech. www.nyclu.org." (Id. ¶¶ 15, 18).

Independent of its work on the Billboard, the NYCLU became involved in lobbying activity in support of a legislative

proposal that would entitle New Yorkers to exercise free speech rights at shopping malls. (*Id.* ¶ 16). The Billboard made no mention of the legislative proposal that was the subject of the NYCLU's lobbying effort. (*Id.* ¶ 18). The NYCLU's Legislative Director played no role in the creation of the Billboard and only learned of its existence after the NYCLU's work on the Billboard was completed. (*Id.* ¶ 17).

The Albany Times–Union newspaper ran an article on April 1, 2003 ("Albany Times–Union Article") stating that the NYCLU paid $4,000 for the Billboard. (Def. 56.1 Stmt ¶ 18; McHale Decl.,[1] Ex. 4). The text of the article stated, "NYCLU Officials said the purpose of the billboard is to promote a law proposed by Long Island Democratic Assemblyman Steven Engelbright that would prevent malls from restricting what customers can wear on T-shirts, buttons, or jackets." (Def 56.1 Stmt ¶ 21; McHale Decl., Ex. 4).

In July 2003, the NYCLU's Legislative Director filed a report with the Commission on the NYCLU's lobbying activity for the first half of 2003. (Pl. Rule 56.1 Stmt ¶ 25). The filing did not include the NYCLU's work on the Billboard or any other non-lobbying work concerning free speech rights in shopping malls. (*Id.*).

In the fall of 2003, Roberta Law, a Commission program operations analyst, reviewed the NYCLU's lobbying activity filing for the first half of 2003 and compared it with a media clippings file that included the Albany Times–Union Article. (Def. Rule 56.1 Stmt ¶¶ 27–28). Based upon her review of the article, Ms. Law sent a routine letter to the NYCLU on October 23, 2003 ("October 23, 2003 Letter"), advising

that the Commission had become aware of Billboard and instructing the NYCLU to amend its filing to include the Billboard as a lobbying expense. (*Id.* ¶ 29; Grandeau Decl.[2] Ex. 4). The NYCLU received the letter on October 28, 2003 and filed this action on November 3, 2003. (Pl. 56.1 Stmt ¶¶ 26, 28).

On November 5, 2003, the Commission sent a letter withdrawing its request for information about the Billboard on the basis that the NYCLU had not paid for it. (*Id.* ¶ 30). On November 6, 2003, counsel for the NYCLU faxed a letter to the Commission stating that the NYCLU had paid for the Billboard. (*Id.* ¶ 32). The Commission responded the same day with a letter reiterating that the Commission was not seeking information about the Billboard. (*Id.*). On December 4, 2003, Commission counsel Ralph Miccio sent a letter ("December 4, 2003 Letter") to counsel for the NYCLU stating the Commission's position as follows:

> Please be advised that the Lobbying Commission's position regarding the billboard has never been that the billboard in and of itself constitutes lobbying, but rather, its use as part of a lobbying campaign would make the cost of the billboard a reportable lobbying expense **if paid for by a registered lobbyist.**
>
> Our investigation disclosed that [the] NYCLU did not pay Lang Media for placement of the billboard. If you continue to insist that the NYCLU did in fact pay for the billboard, please provide a copy of the relevant invoice from Lang Media and cancelled check of the NYCLU at your earliest convenience.

---

1. "McHale Decl." refers to the Declaration of Bruce B. McHale, Assistant Attorney General for the State of New York, executed December 9, 2005.

2. "Grandeau Decl." refers to the Declaration of David M. Grandeau executed on November 17, 2005.

(Def. 56.1 Stmt ¶ 37; Miccio Decl.[3] ¶ 2 & Exhibit) (emphasis in original). The NY-CLU filed a motion for a preliminary injunction against further action by the Commission. (Pl. 56.1 Stmt ¶ 43). In response to the preliminary injunction motion, Mr. Miccio submitted an affidavit stating that the Commission had received no invoice or cancelled check relating to the Billboard, was satisfied that the NY-CLU had not paid for placement of the Billboard, and considered the matter closed. (*Id.* ¶ 43; Dunn Aff.[4] ¶ 16 & Ex. F).

The Commission, by notice of motion dated December 15, 2003, moved to dismiss the action on *Younger v. Harris* abstention grounds because the proceeding before the Commission was ongoing. *New York Civil Liberties Union v. Grandeau,* 305 F.Supp.2d 327, 328 (S.D.N.Y.2004). In a reply memorandum dated December 19, 2003, just four days later, the Commission took the contradictory position that its inquiry into the Billboard was closed and that the action should be dismissed as moot. *Id.* In support of its motion, the Commission submitted a declaration, framed in the present tense, which stated, "the Commission makes no request of the NYCLU for any further information ... and considers this matter to be closed." *Id.* at 330 (quoting Declaration of Ralph P. Miccio, executed on December 19, 2003). In denying the Commission's motion to dismiss on grounds of mootness, this Court relied on four factors:

(1) the contradictory positions taken by the Commission in this matter; (2) the disputed basis on which the Commission has withdrawn its request/demand for filing regarding the Billboard; (3) the appearance that the Commission's withdrawals have been in response to litigation brought by the NYCLU; and (4) the narrowly drawn "present intention" declaration provided by the Commission in support of the present motion.

*Id.* at 330–31. Following denial of Defendant's motion to dismiss, the parties proceeded with depositions and other discovery.

Commission Executive Director David Grandeau gave the following testimony at his deposition:

A. No one ever said that the billboard itself was lobbying. And quite frankly, it isn't lobbying. Billboards don't lobby unless they have specific exhortation to contact a legislator about a position

.     .     .     .     .

But every billboard, if it's used as part of your lobbying effort, is a lobbying expense that has to be reported.

.     .     .     .     .

Q. .... Taking our billboard, what's the theory under which something that on its face is not lobbying and can't be carried into a—

A: Uh-huh.

Q: —legislator's office—

A. Right.

Q: —how does that become part of lobbying activity?

A. Well, it becomes an expense of your lobbying effort if you have put it up in support of your lobbying effort....

(Grandeau Dep.[5] at 184:21–185:5, 185:21–186:7). Donna Lieberman, Executive Di-

---

**3.** "Miccio Decl." refers to the Declaration of Ralph P. Miccio, legal counsel to the New York Temporary State Commission on Lobbying, executed on November 10, 2005.

**4.** "Dunn Aff." refers to the Affidavit of Christopher T. Dunn, counsel for the NYCLU, affirmed under penalty of perjury December 9, 2005.

**5.** "Grandeau Dep." refers to the deposition of

rector of the New York Civil Liberties Union, gave the following deposition testimony:

> Q. Would it be correct to state that the billboard was not part of a legislative lobbying campaign?
>
> A. Right.

(Lieberman Dep.[6] at 13:20–23). Robert Perry, Legislative Director of the NYCLU, testified as follows:

> Q. Would it be correct to state that to the best of your knowledge and understanding, the NYCLU's involvement with the billboard was not part of your lobbying campaign?
>
> A. That's correct.

(Perry Dep.[7] at 27:11–15).

The Commission's file on the Billboard has been closed since Mr. Miccio's letter of December 4, 2003 to NYCLU counsel. (Def. 56.1 Stmt ¶ 39). The Commission convened an executive session on April 25, 2006 and passed a resolution (the "Executive Session Resolution") declaring that the inquiry into the Billboard has been closed since December 2003 and that the closure is final. (Shechtman Decl.[8] & Exhibit). The Executive Session Resolution states that "the Commission intends that it be legally bound by this decision ... [and] does not now and will not in the future seek reporting from the New York Civil Liberties Union pertaining to the Crossgates Mall billboard[.]" *Id.*

## II. *Summary Judgment Standard*

Summary judgment is appropriate under Rule 56 if the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). All ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1982)).

The moving party must initially satisfy the burden of "informing the district court of the basis for its motion" and must identify the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is then shifted to the non-moving party, which must provide "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "[T]he mere existence of some alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Materiality of facts is determined by the substantive law, *see id.* at 250, 106 S.Ct. 2505.

## III. *Mootness*

■ "The inability of the federal judiciary 'to review moot cases derives from Art.

---

David M. Grandeau held on June 29, 2005 (annexed to Dunn Aff., Ex. J; McHale Decl., Ex. 2).

**6.** "Lieberman Dep." refers to the deposition of Donna Lieberman held February 24, 2005. (McHale Decl., Ex. 2).

**7.** "Perry Dep." refers to the deposition of Robert Perry held March 14, 2005. (McHale Decl., Ex. 3).

**8.** "Shechtman Decl." refers to the Declaration of Paul L. Shechtman, current Chair of the New York Temporary State Commission on Lobbying, executed on May 2, 2006.

III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964)). The judgment of a federal court "must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). In determining whether an action for declaratory judgment has become moot, "'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy ... *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*'" (*Id.* at 402, 95 S.Ct. 2330) (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)) (emphasis in original).

■■■■ The issue of mootness is one of subject matter jurisdiction, which can be raised at any time during a case or proceeding. *Fox v. Board of Trustees,* 42 F.3d 135, 140 (2d Cir.1994). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser,* 422 U.S. at 401, 95 S.Ct. 2330.

■■■ Where a party has voluntarily ceased unlawful conduct, that party bears the burden of showing that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Advertising v. Town of Or-*

*chard Park,* 356 F.3d 365, 375 (2d Cir. 2004). At the same time, "a federal court should refuse to hear a case that no longer presents a live case or controversy regardless of whether any party has urged dismissal." *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 648 (2d Cir.1998). A court may raise the issue of mootness *sua sponte* where it appears that a live controversy is absent. *Id.*

Upon the evidence submitted by the parties in connection with the present cross-motions for summary judgment, it is apparent that there is no live case or controversy between the parties and the action must be dismissed as moot.

IV. *Discussion*

■■■ On the prior motion to dismiss on grounds of mootness, the Commission failed to meet its burden of showing the absence of a case or controversy. *See, generally, Grandeau,* 305 F.Supp.2d 327. This Court analyzed the issue under the rubric of voluntary cessation of alleged unlawful activity. *Id.* at 330. Abandonment of the challenged conduct was found lacking because, *inter alia,* the Commission had taken contradictory positions on the status of the Billboard investigation and had made a mere statement of present intent to abandon the investigation. *Id.* at 330–31.

The record now before the Court shows that, despite the passage of an extended period of time, the Commission has made no inquiries of the NYCLU regarding the Billboard since the December 4, 2003 letter. More significantly, the Commission passed the Executive Session Resolution legally binding itself to a formal closing of the matter and stating that "the Commission does not now and will not in the future seek reporting from the New York State Civil Liberties Union pertaining to the Crossgates Mall billboard[.]" (Shecht-

man Decl. & Exhibit). The Commission's statement of intent to close the Billboard inquiry has become complete and irrevocable, obviating the concern that it will recur. *Lamar Advertising,* 356 F.3d at 375.

The NYCLU urges that the Commission's policy of seeking information on advocacy that is not part of an NYCLU lobbying campaign, but touches upon issues in common with the NYCLU's lobbying activity, is the relevant Commission conduct that may continue or recur. Having reviewed the record on summary judgment, this Court finds that the alleged Commission policy challenged by the NYCLU is not presented on the facts of this case. Both sides are in agreement that expenses incurred as part of the NYCLU's non-lobbying activities, including placement of the Billboard at issue in this case, are not reportable as lobbying expenses unless they are part of a lobbying effort. There is, therefore, no substantial, real, and immediate controversy between the parties warranting the issuance of a declaration clarifying their legal rights and relationship. *Preiser,* 422 U.S. at 402, 95 S.Ct. 2330.

Based on the evidence in the record, it is clear that the alleged controversy began with a simple error of fact. The Albany Times–Union Article reporting that the NYCLU had paid $4,000 for the Billboard stated, apparently erroneously, that "the purpose of the billboard is to promote a law ... that would prevent malls from restricting what customers can wear on T-shirts, buttons or jackets." (Def. Not. of Mot., Ex. 4). Reading this as an expense that was part of a lobbying effort and that had not been reported in the NYCLU's July 2003 filing, Commission analyst Roberta Law sent out the October 23, 2003 Letter requesting an amended filing. (Def. Rule 56.1 Stmt ¶ 29). This is the only correspondence from the Commission directly requesting information from the NYCLU regarding the Billboard.

The December 4, 2003 Letter was conditional, spelling out the circumstances under which the NYCLU was required to include the Billboard in its lobbying report:

> Please be advised that the Lobbying Commission's position regarding the billboard has never been that the billboard in and of itself constitutes lobbying, but rather, its use as a part of a lobbying campaign would make the cost of the billboard a reportable lobbying expense **if paid for by a registered lobbyist.**

(Miccio Decl. & Exhibit) (emphasis in original). At this juncture, the dispute between the parties was focused on whether or not the NYCLU had paid for the Billboard. The letter, nevertheless, made clear the Commission's position that the Billboard was not reportable as a lobbying expense unless it was used as part of a lobbying campaign. The undisputed facts at the summary judgment stage show that the NYCLU's Billboard effort was separate and apart from the NYCLU's lobbying activity—indeed, that the NYCLU's lobbying arm was not even aware of the Billboard until after it had been erected. (Pl. 56.1 Stmt ¶¶ 17–18). Under those undisputed facts, the Commission agrees with the NYCLU that the Billboard is not reportable as a lobbying expense because it was not put up as part of a lobbying campaign. (Grandeau Dep. at 185:21–186:7; Grandeau Decl. ¶¶ 14–16). There is, therefore, no case or controversy between the parties with respect to a Commission policy at issue on the facts of this case. Any decision construing the reach of the Commission's policy would amount to an advisory opinion founded, impermissibly, upon a hypothetical set of facts. *Preiser,* 422 U.S. at 401, 95 S.Ct. 2330.

Accordingly, the action is dismissed as moot.

### Conclusion

Plaintiff NYCLU's motion for summary judgment (dkt. no. 42) is denied. Defendant Grandeau's motion for summary judgment (dkt. no. 37) is granted to the extent that it seeks dismissal on the ground of mootness. The Clerk of the Court is directed to mark the action closed and all pending motions denied as moot.

SO ORDERED.